DECISION
{¶ 1} Relator, John Willhoit, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate concluded that, because the commission's non-medical analysis failed to comply with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, this court should issue a writ of mandamus. The magistrate found that the vocational expert's report, upon which the commission relied heavily, did not support the commission's conclusion that the skills relator acquired in using power and auxiliary equipment are transferable to sedentary employment. Nor did the commission's order explain how those skills are transferable to sedentary employment. Therefore, the magistrate determined that the commission abused its discretion in finding transferability of skills to support a denial of PTD compensation.
{¶ 3} No objections have been filed to the magistrate's decision.
{¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, this court shall issue a writ of mandamus ordering the commission to vacate its staff hearing officer's order of January 4, 2000, and, in a manner consistent with the magistrate's decision, enter a new order either granting or denying relator's PTD application.
Writ of mandamus granted.
BOWMAN and LAZARUS, JJ., concur.
 IN MANDAMUS
{¶ 5} In this original action, relator, John Willhoit, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
{¶ 6} 1. On January 22, 1996, relator sustained an industrial injury while employed as a truck driver/laborer for the highway maintenance department of respondent city of Cincinnati. On that date, coworkers removed both pins of a snowplow causing the plow's front end to fall and impact relator in the leg and causing him to fall backwards onto his buttocks. The industrial claim is allowed for: "[l]eft hamstring strain; lumbosacral strain; medial meniscus tear left knee; patellar chonromalacia; cruciate ligament tear left knee; aggravation pre-existing arthritis of the lumbar spine," and is assigned claim No. 96-329152.
{¶ 7} 2. Relator also has an industrial claim allowed for "laceration right index finger" which is assigned claim No. 96-408428.
{¶ 8} 3. On June 22, 1999, following a period of temporary total disability, relator filed an application for PTD compensation.
{¶ 9} 4. Under the education section of the application, relator stated that the sixth grade is the highest grade of education he has completed and this occurred in the year 1954. He has not obtained a GED certificate. The application form posed three questions to the application: (1) "Can you read?" (2) "Can you write?" (3) "Can you do basic math?" Given a choice of "Yes," "No" and "Not well," relator selected the "Yes" response for the first and third queries and the "Not well" response for the second query.
{¶ 10} 5. Under the "work history" section of the application, relator indicated that he was employed as a "truck driver/laborer" for the highway maintenance department from 1969 to 1996. He describes the duties of his job as follows:
 * * * I drove a truck and did labor type work on site. For example, did mowing on highways with a tractor; trimmed trees; filled and patched pot holes, etc.
{¶ 11} 6. Relator also completed a vocational questionnaire on a form prepared by the commission. The questionnaire asks the PTD applicant to answer "Yes" or "No" to the following queries:
In your job did you:
[1] Use machines, tools, or equipment of any kind?
[2] Use technical knowledge or skills?
 [3] Do any writing, complete reports, or perform similar duties?
[4] Have supervisory responsibilities?
{¶ 12} Relator replied "Yes" to the first and third queries and "No" to the second and fourth queries.
{¶ 13} Relator responded to two further queries on the vocational questionnaire.
 Your basic duties: I drove a heavy truck in order to haul materials and equipment to work sites or storage areas; operated auxiliary equipment such as snow blows and sand spreaders; operated tractor mowers; performed heavy or unskilled manual labor when assisting a crew assigned to a work project, including loading, unloading and transporting of materials; operating jack hammers; lifting bags of concrete or other materials; raking concrete; shoveling gravel or sand; washing trucks or equipment; cutting grass and shrubs; removing debris, etc.
 Machines, tools, equipment you used: tractor; shovels; wheel barrels; power saws; kicks; rakes; etc.
{¶ 14} 7. On September 3, 1999, relator was examined by commission specialist and orthopedic surgeon, Kenneth R. Hanington, M.D. Dr. Hanington found that the industrial injuries resulted in a 15 percent whole body impairment and that they restrict relator to sedentary employment. Dr. Hanington also noted that relator has undergone two left knee surgeries but the left knee remains symptomatic. Symptoms include pain with ambulation, swelling, and difficulty with stairs. Dr. Hanington also noted that a July 14, 1997 MRI of the lumbar spine showed "mild degenerative disease of the facets; otherwise it was normal with no disc degeneration or neural compromise." Relator complains of constant low backache and difficulty with prolonged walking. Relator is able to drive a car.
{¶ 15} 8. Dr. Hanington completed an Occupational Activity Assessment Report dated September 3, 1999. The occupational activity assessment form asks the examining doctor to indicate by checkmark the claimant's capability in each of several work related activities. Dr. Hanington indicated that relator can sit "3-5 HRS," stand "3-5 HRS," and walk "3-5 HRS." He can lift or carry up to ten pounds but not over ten pounds. He cannot climb ladders or stairs.
{¶ 16} His ability to handle (seize, hold, grasp, turn) is unrestricted. He can reach overhead and at knee level occasionally. He cannot crouch, stoop, bend or kneel.
{¶ 17} The commission requested an Employability Assessment Report from William H. Hyde, a vocational expert. The Hyde report dated October 20, 1999, responds to the following query:
 * * * Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
{¶ 18} Indicating acceptance of Dr. Hanington's report and responding to the above query, Hyde wrote:
 1) Immediate: Stuffer, Sorter, Final Assembler; Inspector, Eyeglass Frames, Machine Engraver I; Service Clerk; Maintenance Service Dispatcher; Order Clerk, Food Beverage; Surveillance System Monitor.
 With academic remediation to bring all general educational development (GED) levels up to USDOL=3 (7th-11th grade): Repair Order Clerk; Pari-mutuel Ticket Checker; Referral Clerk, Temporary Help Agency; Telephone Solicitor.
{¶ 19} The Hyde report further states:
EFFECTS OF OTHER EMPLOYABILITY FACTORS
 1. Question: How, if at all, do the claimant's age, education, work history, or other factors (physical, psychological, and sociological) affect his/her ability to meet the basic demands of entry level occupations?
 Answer: Age: Will likely affect ability to obtain employment due to reduced marketability, age discrimination. Ability to maintain physical and mental stamina for a full work week and adaptability to changes in work tasks or the work environment may be more difficult.
 Education: Lack of a GED will make it more difficult for claimant to obtain work requiring higher-level skills, but 6th grade level is adequate to meet the basic demands of a number of entry-level jobs, primarily unskilled, some semi-skilled. Claimant reports he can read and do basic math, but is a poor speller. There is no indication he left school because of poor performance, but rather because his father had left the family
 Work History: May reflect limited adaptation to traditional clerical, retail, or production work tasks or settings. Claimant's long, stable work history is a positive factor.
 Other: 1) Unrelated conditions from medical history include asthma, heart disease with triple bypass surgery in 1993, spinal meningitis, in 1996, hypertension, emphysema, bilateral inguinal hernia repairs.
 2) Other than Adjusted Worker Trait Profile from work history, there is no basis to find that the claimant does not possess at least average (3) spatial aptitude, form perception, finger dexterity, manual dexterity, and color discrimination.
 2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
 Answer: Claimant has demonstrated the ability to develop academic or other skills required to perform a number of entry-level unskilled, some semi-skilled jobs via his work history. There is no basis to find incapacity for remediation to the 7th — 11th grade level (USDOL = 3).
 3. Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
Answer: Strengths
 1) Claimant has had a long and stable work history. He left school not because of poor performance, but because his father had left the family and he needed to work.
 2) Claimant indicates he can read, do basic math, and has the written skills to complete basic work completion reports. Aside from driving a heavy truck, he has acquired the technical knowledge and skills to operate a number of types of power and auxiliary equipment in the course of his employment with the municipal highway department.
Limitations:
 1) Claimant has not worked since 1996 and this would prove to be a significant barrier to obtaining, maintaining, and/or readjusting to reemployment.
 2) Claimant's capacity to adapt to unfamiliar clerical, retail, and/or production work tasks and settings may deserve some consideration.
* * *
B. WORK HISTORY:
Job Title Skill Level Strength Level Dates
Maintenance
Worker, Hwy. Semi-skilled Medium 1969-96
Bartender Semi-skilled Light 1962-69
{¶ 20} 9. Following a January 4, 2000 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. For the threshold medical determination, the SHO relied exclusively upon the reports of Dr. Hanington finding relator medically able to perform sedentary employment. The SHO's order further states:
 The Staff Hearing Officer has reviewed and evaluated the Employability Assessment Report which was completed at the request of the Industrial Commission by Mr. Hyde on October 20, 1999. The vocational expert found that the claimant's age of 61 would likely affect the claimant's ability to obtain employment due to reduced marketability and age discrimination. He indicated that the claimant's ability to maintain physical and mental stamina for a full work week and ability to adapt to changes in work task or the work environment would be more difficulty [sic].
 The vocational expert found that the claimant's sixth grade education would be adequate to meet the basic demands of a number of entry level positions, most of which would be unskilled in nature, but some of which would be semi-skilled in nature. The vocational expert noted that the claimant reports that he can read and do basic math.
 The vocational expert found that the claimant's past work history may reflect limited ability to adapt to traditional clerical, retail or production settings but that the claimant's past work history has been long and stable and that this was a positive factor.
 The vocational expert further found that claimant's past work history has provided the claimant with the ability to engage in written skills to complete basic work reports. The vocational expert further found that the claimant has acquired from his previous work experience the technical knowledge and skills to operate a number of types of power and auxiliary equipment.
 Mr. Hyde found that there was no reason to find that the claimant could not engage in academic or other skilled retraining to perform entry level unskilled or semi-skilled work. He stated that there was no basis to find incapacity for remediation to the seventh to the eleventh grade.
 The vocational expert found that the claimant could engage in a number of employment activities immediately based upon the restrictions and abilities noted by Dr. Hanington, including working as a stuffer, sorter, final assembler, inspector, machine engraver, service clerk, maintenance service dispatcher, order clerk, and surveillance system monitor.
 Following academic remediation, the vocational expert found that the claimant could engage in employment as a repair order clerk, ticket checker, referral clerk, and telephone solicitor.
 The Staff Hearing Officer finds that the claimant is 61 years of age, has a sixth grade education and has previous work experience as a truck driver, maintenance worker and bartender.
 The Staff Hearing Officer finds that the claimant's age of 61 would be a barrier to the claimant engaging in sustained remunerative work activity.
 The Staff Hearing Officer finds that the claimant's sixth grade education is adequate to meet the basic demands of a number of entry level jobs which are unskilled in nature and some which are semi-skilled in nature. The Staff Hearing Officer finds that the claimant has the ability to read and do basic math and that this would be of benefit to the claimant in engaging in entry level employment activity which is sedentary in nature.
 The Staff Hearing Officer finds that the claimant's past work experience has been stable in nature and is not a barrier with regard to the claimant engaging in sustained remunerative work activity of a sedentary nature. The claimant's past work experience has demonstrated that the claimant has written skills to complete basic work reports and that the claimant has acquired technical knowledge and skills in the operation of a number of types of power and auxiliary equipment and that these skills and abilities would be transferable to other types of sedentary employment.
 The Staff Hearing Officer finds that the claimant has the ability to develop academic or other skills required to perform entry level, unskilled or semi-skilled employment. There is nothing in the record to find that the claimant is unable to engage in remediation to the seventh to the eleventh grade level.
 The Staff Hearing Officer finds that there are a number of employment positions in which the claimant could engage based upon the restrictions and abilities noted by Dr. Hanington. The claimant could engage in such employment activity as a stuffer, sorter, final assembler, inspector, machine engraver, service clerk, maintenance and service dispatcher, order clerk and surveillance system monitor.
 The Staff Hearing Officer further finds that following appropriate academic or skilled remediation, the claimant could engage in a number of employment activities within the restrictions and abilities noted by Dr. Hanington including work as a repair order clerk, ticket checker, referral clerk and telephone solicitor.
 Based upon the claimant's age, education, work experience as well as the medical evidence cited above, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment activity and is not permanently and totally disabled.
{¶ 21} 10. On February 9, 2000, the commission denied relator's request for reconsideration of the January 4, 2000 SHO's order.
{¶ 22} 11. On December 18, 2001, relator, John Willhoit, filed this mandamus action.
Conclusions of Law:
{¶ 23} Because the commission's nonmedical analysis fails to comply with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
{¶ 24} For its threshold medical determination, the commission, through its SHO, relied exclusively upon the reports of Dr. Hanington and found that the industrial injury restricts relator to sedentary employment. In this action, relator does not challenge the reports of Dr. Hanington nor the commission's determination that he is medically able to perform sedentary employment. However, relator does challenge the commission's nonmedical analysis.
{¶ 25} Ohio Adm. Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B) sets forth definitions applicable to the commission's rules. Ohio Adm. Code 4121-3-34(B)(3) sets forth definitions of "vocational factors." Ohio Adm. Code 4121-3-34(B)(3)(c) sets forth definitions relating to "work experience" and states:
 (iv) "Transferability of skills" are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the claimant. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
 (v) "Previous work experience" is to include the claimant's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the claimant may be able to perform. Evidence may show that a claimant has the training or past work experience which enables the claimant to engage in sustained remunerative employment in another occupation. The relevance and transferability of previous work skills are to be addressed by the adjudicator.
{¶ 26} The commission cannot deny PTD compensation based upon "transferable skills" that it refuses to identify. State ex rel. Bruner v. Indus. Comm. (1997), 77 Ohio St.3d 243, 245; State ex rel. Rhoten v. Indus. Comm. (1996), 77 Ohio St.3d 8, 11; State ex rel. Haddix v. Indus. Comm. (1994), 70 Ohio St.3d 61. However, a claimant's lack of transferable skills does not mandate a PTD award. State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 142.
{¶ 27} In his report, Hyde states:
 * * * Aside from driving a heavy truck, he has acquired the technical knowledge and skills to operate a number of types of power and auxiliary equipment in the course of his employment with the municipal highway department.
{¶ 28} Clearly, Hyde does not assert or conclude that the skills relator acquired in the course of his employment with the highway department are transferable to sedentary employment. Moreover, while Hyde states that relator acquired the skills to operate a number of types of power and auxiliary equipment, he does not specify what those skills are.
{¶ 29} In its order, the commission states:
 * * * [T]he claimant has acquired technical knowledge and skills in the operation of a number of types of power and auxiliary equipment and that these skills and abilities would be transferable to other types of sedentary employment.
{¶ 30} The commission's order relies heavily upon the Hyde report to support the commission's nonmedical analysis. In fact, nowhere in the order is there an indication that the commission disagrees with the Hyde report in any respect. Yet the Hyde report does not support the commission's conclusion that the skills relator acquired in using power and auxiliary equipment are transferable to sedentary employment. Nor does the commission's order explain how those skills are transferable to sedentary employment. Thus, the commission abused its discretion in finding transferability of skills to support a denial of PTD compensation. Bruner; Rhoten; Haddix, supra. In the magistrate's view, this flaw alone requires that the court issue a writ of mandamus ordering the commission to reanalyze the nonmedical factors. See Bruner, supra.
{¶ 31} The magistrate disagrees with relator's contention or suggestion that his sixth grade education mandates a PTD award. Ohio Adm. Code 4121-3-34(B)(3)(b)(ii) states:
 "Marginal education" means sixth grade level or less. A claimant will have ability in reasoning, arithmetic, and language skills which are needed to do simple unskilled types of work. Generally, formal schooling at sixth grade level or less is marginal education.
{¶ 32} Ohio Adm. Code 4121-3-34(B)(3)(c)(i) states:
 "Unskilled work" is work which needs little or no judgement to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. Jobs are unskilled if the primary work duties are handling, feeding, and offbearing (placing or removing materials from machines which are automatic or operated by others), or machine tending and a person can usually learn to do the job in thirty days and little specific vocational preparation and judgment are needed.
{¶ 33} With a sixth grade education, by definition, relator is confined to "simple unskilled types of work." There is no indication in the commission's rules to indicate the nonexistence of sedentary unskilled work that can be performed with a marginal eduction. While it may be that many or most unskilled jobs require greater than a sedentary capacity, the commission did not abuse its discretion in finding the existence of unskilled sedentary type jobs. Moreover, the Ohio Supreme Court has upheld a commission denial of PTD compensation to a claimant who had only a sixth grade education. State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354 (industrial injury permitted light work). The Ohio Supreme Court has remanded to the commission for further consideration where the claimant had a sixth grade education. State ex rel. Hanna v. Indus. Comm. (1994), 69 Ohio St.3d 120. In short, relator's sixth grade education does not inherently demand a PTD award.
{¶ 34} In this action, respondent commission seems to concede that its order is flawed in finding transferability of skills. (Commission's brief pgs. 7-8.) Nevertheless, the commission argues that its order should be upheld because the commission allegedly denied PTD "because he could be retrained to perform a wider variety of sedentary jobs, not because his past employment provided him with `transferable skills.'" (Commission's brief pg. 8.) The commission's argument is flawed.
{¶ 35} Even if it can be argued that the commission did not deny PTD compensation solely on the basis of transferability of skills, the order itself indicates that transferability of skills was one of the factors the commission considered to be a positive one that weighed in favor of employability. It is not the duty of this court to re-weigh the factors for the commission, minus the transferability factor, in order to conclude that the outcome might be the same.
{¶ 36} The next question is whether relief pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, is appropriate.
{¶ 37} To begin, Dr. Hanington found that the industrial injury presents only a 15 percent whole body impairment. In State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St. 693, 697, the court observed that, generally, in cases where Gay relief has been granted, the commission's order has coupled vocationally unfavorable evidence with medical evidence that assessed a relatively high degree of physical impairment. The instant case does not fit that profile given Dr. Hanington's 15 percent whole body impairment rating. See Domjancic, supra.
{¶ 38} Moreover, relator's age on the date of the PTD hearing was 61 years. Given his age, it was well within the commission's discretion to consider what type of work, if any, that relator might reasonably be trained to do. Hyde concluded that there is nothing in the record to indicate that relator is unable to engage in remediation to the 7th through 11th grade level. On his PTD application, relator's own self evaluation indicates that he can read and do basic math although he writes "not well," because he is a poor speller. From this self-evaluation, the commission could conclude, and apparently did so in this case, that relator has the ability to academically remediate for sedentary employment positions. See West, supra.
{¶ 39} Clearly, relator's medical and nonmedical profile does not present the one-sidedness necessary to sustain a claim for Gay relief. See State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. Gay relief requires the claimant to show that a new decision by the commission denying PTD would necessarily be an abuse of discretion. State ex rel. Mobley v. Indus. Comm. (1997), 78 Ohio St.3d 579, 585. Where at least one nonmedical factor suggests claimant's capacity for reemployment, the record does not compel the conclusion that the claimant is inevitably PTD. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266,271.
{¶ 40} Given relator's nonmedical profile, as above noted, the magistrate finds that Gay relief is not appropriate in this case.
{¶ 41} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of January 4, 2000, and, in a manner consistent with this magistrate's decision, enter a new order either granting or denying relator's PTD application.