DECISION
{¶ 1} Relator, Franklin County Board of Commissioners, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Joann Grannan ("claimant"), and ordering the commission to find that claimant is not entitled to said compensation.
 {¶ 2} The court referred the matter to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion in granting PTD compensation to claimant and recommended that this court deny the requested writ of mandamus. Relator has filed two objections to the magistrate's decision, and the matter is now before this court for a full, independent review.
 {¶ 3} Preliminarily, we observe that, in her decision, the magistrate properly identified the two central issues raised by relator in this mandamus action. However, in that discussion, the magistrate twice refers to the awarding of "TTD" compensation, instead of the awarding of "PTD" compensation. (See Magistrate's Decision, at ¶ 33.) Nonetheless, when viewed within the context of her entire decision, it is clear that those typographical errors were inconsequential to the magistrate's reasoning and her conclusion regarding relator's argument that the commission abused its discretion in granting PTD compensation to claimant.
 {¶ 4} Relator argues in its first objection to the magistrate's decision that the magistrate erred in concluding that the commission did not abuse its discretion in awarding PTD based solely on claimant's bilateral carpal tunnel syndrome because none of the examining physicians' reports state that conclusion. By its first objection, relator essentially contends that the commission improperly "created" medical evidence in its decision to award PTD compensation because none of the medical reports cited by the staff hearing officer ("SHO") state that claimant is permanently and totally disabled based solely on her bilateral carpal tunnel syndrome.
 {¶ 5} Relator states that it argued before the magistrate that the commission created medical evidence, and that its reliance upon State ex rel. Yellow Freight Sys., Inc. v. Indus.Comm. (1998), 81 Ohio St.3d 56, and State ex rel. Wallace v.Indus. Comm. (1979), 57 Ohio St.2d 55, sufficiently supported its argument. In support of her first objection, relator cites to additional case law in support of the principle that the commission may accept or reject medical evidence, but it may not create it. See relator's objections to the magistrate's decision, citing State ex rel. Valentine v. Indus. Comm., Franklin App. No. 02AP-579, 2003-Ohio-1784; State ex rel. Koza v. Indus.Comm., Franklin App. No. 02AP-903, 2003-Ohio-3434; State exrel. Moore v. Indus. Comm., Franklin App. No. 04AP-974, 2005-Ohio-4927; and State ex rel. Dinner v. Indus. Comm.,
Franklin App. No. 03AP-322, 2004-Ohio-1778. Although those cases support the principle that the commission cannot "create" medical evidence, they do not prohibit the commission from awarding PTD compensation based solely on an allowed condition even though none of the medical reports specifically state the conclusion that the claimant was permanently and totally disabled solely as a result of that allowed condition.
 {¶ 6} In this case, the commission discussed multiple reports in reaching its determination that claimant is entitled to an award of PTD compensation. One of the reports that the commission relied upon was the July 9, 2004 report of Dr. Kenneth A. Writesel. Regarding the SHO's reliance upon that report, relator seems to argue that Dr. Writesel's July 9, 2004 report does not support the awarding of PTD compensation due solely to the bilateral carpal tunnel syndrome. According to relator, the SHO "mischaracterized" Dr. Writesel's report in order to award PTD compensation. We disagree. Dr. Writesel's report states that "[c]onsidering the severe nature of her bilateral carpal tunnel syndrome, [claimant's] job duties would need to be restricted from performing any repetitious or forceful use of both hands and wrists. She should also be limited from lifting, carrying, pushing, or pulling. * * * In my opinion, these restrictions would be considered permanent." The SHO, citing Dr. Writesel's report, stated that claimant's physical restrictions due to the bilateral carpal tunnel syndrome include "no repetitive use of the hands and wrists, no forceful use of the hands and wrists, and no lifting, carrying, pushing, or pulling." Because Dr. Writesel's statement that claimant should be "limited from lifting" reasonably could be viewed as a finding that claimant should be "restricted from lifting," or that her restrictions include "no lifting," the SHO did not "mischaracterize" the physical restrictions outlined by Dr. Writesel.
 {¶ 7} Relator further asserts that an "addendum" to Dr. Writesel's report clarifies that claimant can engage in lifting. Insofar as that "addendum" indicates that claimant is capable of lifting ten pounds frequently, it arguably is not consistent with the medical findings as stated in the July 9, 2004 report. Additionally, that "addendum" was prepared on April 9, 2005, which was months after the mailing of the SHO's order granting PTD compensation. In view of Ohio Adm. Code 4121-3-34(C)(4), that medical evidence was untimely filed. As such, relator's arguments in this mandamus action that rely upon the "addendum" are not persuasive.
 {¶ 8} Despite the restrictions outlined in his July 9, 2004 report, Dr. Writesel opined that claimant would be capable of engaging in remunerative employment. Here, the commission relied upon the specific restrictions imposed by Dr. Writesel but not his opinion that claimant would be capable of engaging in remunerative employment. The SHO resolved that Dr. Writesel's report supports "permanent total disability due solely to the bilateral carpal tunnel syndrome." Thus, the SHO disagreed with Dr. Writesel's conclusion regarding claimant's ability to work and determined that the physical restrictions outlined by Dr. Writesel "remove the claimant from all sustained remunerative employment." The commission did not abuse its discretion in that regard. As this court has stated, "the commission cannot simply rely on a physician's `bottom line' identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report."State ex rel. Owens Corning Fiberglass v. Indus. Comm.,
Franklin App. No. 03AP-684, 2004-Ohio-3841, at ¶ 56.
 {¶ 9} For these reasons, and the reasons set forth in the magistrate's decision, we find relator's first objection to the magistrate's decision to be unpersuasive.
 {¶ 10} By its second objection to the magistrate's decision, relator argues that the magistrate erred in concluding that the commission did not abuse its discretion when it did not address the issue of whether claimant had made a reasonable attempt to participate in rehabilitation prior to awarding PTD. Under this objection, relator simply reasserts arguments that were adequately addressed by the magistrate. For the reasons set forth in the magistrate's decision, relator's arguments relating to the issue of vocational rehabilitation are without merit.
 {¶ 11} Following our independent review of this matter, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Thus, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, except to the extent it is modified to correct the two typographical errors discussed supra in ¶ 3 of this decision. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Brown and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Franklin County : Board of Commissioners, : Relator, : v. : No. 05AP-493 Industrial Commission of Ohio : (REGULAR CALENDAR) and Joann Grannan, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 25, 2005 Ron O'Brien, Prosecuting Attorney, and Amy L. Hiers, for relator.
Jim Petro, Attorney General, and Eric Tarbox, for respondent Industrial Commission of Ohio.
Robert Bumgarner, for respondent Joann Grannan.
 IN MANDAMUS {¶ 12} Relator, Franklin County Board of Commissioners, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Joann Grannan ("claimant"), and ordering the commission to find that claimant is not entitled to said compensation.
Findings of Fact:
 {¶ 13} 1. Claimant sustained two work-related injuries in the course and scope of her employment with relator. "[C]laim number 96-358015 has been allowed for: upper respiratory and nasal irritation due to inhalation of solvent de-greaser [and] [C]laim number 96-333746 has been allowed for: bilateral carpal tunnel syndrome." (Emphasis omitted.)
 {¶ 14} 2. Relative to claimant's bilateral carpal tunnel syndrome, claimant had surgery performed on her right hand in 1996 and on her left hand in 2000.
 {¶ 15} 3. A post-surgical electromyographic examination was performed by Thomas D. Skeels, D.O., on June 26, 2003. Dr. Skeels noted the following: "1) severe [right] carpal tunnel syndrome[;] 2) moderately severe [left] carpal tunnel syndrome." In the comments section, Dr. Skeels noted that he had reviewed a pre-surgical EMG/NCS from 1996 and that, while claimant's right medial nerve study had improved it is still in the severe category. Dr. Skeels recommended MRI's for both of claimant's wrists.
 {¶ 16} 4. Claimant was seen by Desmond J. Stutzman, D.O., on September 29, 2003. While Dr. Stutzman noted that claimant appeared to have some improvement in her right hand, he further noted:
* * * Her EMG and nerve conduction velocity test prior to the surgical release was somewhat severe and for this reason, I feel that she may have had permanent nerve damage prior to the carpal tunnel release performed in 1996 and that her progress or recovery is going to be minimal at best.
 {¶ 17} 5. Claimant was also seen by Jeremy J. Burdge, M.D., who issued a report dated November 3, 2003. Dr. Burdge noted that claimant stated that her pain is so severe that she is unable to do much of anything other than the activities of daily living and that even these are extremely difficult for her due to the chronic pain in her hands and forearms. On physical examination, Dr. Burdge noted:
[Claimant] has severe pain, even to light touch, overlying the carpal canal and across the palmar aspect of her hand. She has a positive Tinel and positive Phalen's sign. She has evidence of thenar muscle atrophy and weakness bilaterally.
 {¶ 18} Dr. Burdge noted that claimant had a 90 percent impairment of the median nerve and a 90 percent impairment of the motor and sensory branch of the median nerve which equated with a total percent impairment of 44 percent for the whole person. Lastly, Dr. Burdge noted as follows: "As previously mentioned, this patient has some of the most severe carpal tunnel symptoms and severe EMG findings after surgical release that I have ever seen."
 {¶ 19} 6. Claimant's treating physician, Charles B. May, D.O., submitted a report dated May 18, 2004, wherein he opined as follows:
Pursuant to your request, I have had the opportunity to review my medical files in regards to Joann Grannan in regards to the above two captioned industrial injuries. Based upon my past and current evaluations of Ms. Grannan, and based upon the fact that Ms. Grannan is currently 64-years-old and has an 11th grade education, it is my medical opinion that Joann Grannan is permanently and totally disabled from any form of substantial gainful employment as a direct and proximate result of all of the allowed conditions in both of the above-captioned industrial claims.
 {¶ 20} 7. Claimant was also examined by Kenneth A. Writesel, D.O., who issued a report dated July 9, 2004. On physical examination, Dr. Writesel noted the following:
Examination of the wrists reveals well-healed, longitudinal flexor surface scars without keloid or hypertrophic scar formation. She has a positive Tinel's sign as well as a positive Phalen's test bilaterally. Finkelstein test is noted. She has full range of motion in all planes. There is no evidence of muscular atrophy. She has weak but equal grip strength bilaterally. Capillary refill is brisk and less than two seconds in all ten nailbeds. She has 5 mm two-point discrimination in all ten fingertips.
 {¶ 21} Dr. Writesel concluded that claimant would be capable of some remunerative employment with the following restrictions:
Considering the severe nature of her bilateral carpal tunnel syndrome, her job duties would need to be restricted from performing any repetitious or forceful use of both hands and wrists. She should also be limited from lifting, carrying, pushing, or pulling. She would need to be limited from exposure to airborne irritants and extremes of temperatures, as this would worsen her pulmonary status. In my opinion, these restrictions would be considered permanent.
 {¶ 22} 8. The record also contains the September 2, 2004 report of Robin G. Stanko, M.D., who examined claimant on behalf of the commission. Dr. Stanko did not assign any percentage of impairment relative to claimant's upper respiratory condition; however, relative to her bilateral carpal tunnel syndrome, Dr. Stanko opined that her condition had reached maximum medical improvement ("MMI") and he assigned a 33 percent whole person impairment. Dr. Stanko opined that relator could perform light duty work provided that there was "rare repetitive power grip or power pinch activity."
 {¶ 23} 9. Relative to her allowed psychological condition, claimant submitted the May 7, 2003 report of Michael Glenn Drown, Ph.D., who opined that claimant could not perform in any work environment regardless of the stress level.
 {¶ 24} 10. Claimant was also examined by Donald L. Brown, M.D., on behalf of the commission. In his September 2, 2004 report, Dr. Brown concluded that claimant had reached MMI for her allowed psychological condition, indicated she had a moderate level of impairment, and assessed a 30 to 35 percent whole person impairment for her allowed psychological condition.
 {¶ 25} 11. Claimant was also examined by Lee Howard, Ph.D., who issued a report dated June 29, 2004. Dr. Howard opined that claimant could return to remunerative employment, that she could perform at the simple, moderate and complex task range, and that any additional psychological intervention necessary would be for maintenance purposes only.
 {¶ 26} 12. The record also contains the October 8, 2004 vocational report prepared by Molly S. Williams. Considering claimant's physical restrictions, her former job, advanced age, limited education, and lack of transferable skills, Ms. Williams opined that claimant was permanently and totally disabled.
 {¶ 27} 13. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on December 1, 2004, and resulted in an order granting that compensation. The SHO awarded PTD compensation solely upon the medical evidence submitted relative to claimant's allowed condition of bilateral carpal tunnel syndrome. Specifically, the SHO noted as follows:
Dr. May states the claimant is permanently and totally disabled as a direct and proximate result of the allowed conditions. While Dr. Writesel does not state this conclusion, he gives physical restrictions due to the bilateral carpal tunnel syndrome that include no repetitive use of the hands and wrists, no forceful use of the hands and wrists, and no lifting, carrying, pushing or pulling. Even sedentary work, as defined in the Dictionary of Occupational Titles, requires lifting up to 10 pounds. In light of this, the physical restrictions given by Dr. Writesel are found to remove the claimant from all sustained remunerative employment. Therefore, Dr. Writesel's report is found to support permanent total disability due solely to the bilateral carpal tunnel syndrome.
The 06/26/2003 EMG studies found severe to moderate severe carpal tunnel syndrome in each wrist. A repeat study of the right wrist on 01/22/2004 found continuing severe right carpal tunnel syndrome despite injections by Dr. Stutzman. On 09/29/2003 Dr. Stutzman indicated an inclination not to perform further surgery if the injections were not helpful. The claimant testified that she has been told that further surgery would likely do more damage then good and is not going to be done. This appears to be consistent with the above noted report from Dr. Stutzman. On 11/03/2003, Dr. Burdge noted the claimant has some of the most severe symptoms and EMG findings post-surgery that he has ever seen. These reports are found to support the finding of permanent total disability due solely to the allowed bilateral carpal tunnel syndrome.
The Staff Hearing Officer does not find the allowed psychiatric condition to prevent he claimant from returning to her former job or any other type of low and moderate stress work for which she would otherwise be qualified. Therefore, the psychiatric condition is not found to contribute to the claimant's permanent total disability. This finding is based on the reports of Dr. Howard (06/24/2004 and 07/23/2004) and Dr. Brown (09/02/2004).
* * *
Based upon the above, as well as a careful consideration of all evidence in file and at the hearing, the Staff Hearing Officer concludes that the claimant is Permanently and Totally Disabled.
The start date of the payment of the Permanent and Total Disability Compensation is 05/18/2004. The Staff Hearing Officer chooses this date because it is the date of the earliest medical evidence relied upon in granting permanent total disability.
It is the finding of the Staff Hearing Officer that the Permanent and Total Disability Compensation is to be allocated as follows: 100% to Claim Number 96-333746 and 0% to Claim 96-358015.
The Staff Hearing Officer makes the above allocation based on the fact that permanent total disability is based solely on the bilateral carpal tunnel syndrome condition allowed in claim 96-333746.
 {¶ 28} 14. Relator filed a motion for reconsideration and attached what relator calls an addendum to the report of Dr. Writesel. That "addendum" was prepared on April 9, 2005. Therein, Dr. Writesel clarified his restrictions as follows:
* * * [T]o further clarify these restrictions, I am of the opinion that she would most definitely be capable of lifting 10 pounds on a frequent basis, 15 pounds on an intermediate basis, and 20 pounds occasionally. As a consequence of this, she would most definitely be capable of returning to a sedentary type position, based on currently accepted standards for sedentary duty.
 {¶ 29} 15. By orders mailed April 21 and April 26, 2005, the commission denied relator's request for reconsideration after finding that relator had failed to meet the burden of proof that the SHO order contained a clear error of such character that remedial action would clearly follow.
 {¶ 30} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 32} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 33} Relator raises two issues in this mandamus action: (1) the commission failed to address the requirement that claimant make a reasonable attempt to participate in rehabilitation prior to awarding TTD compensation; and (2) the commission abused its discretion by awarding TTD compensation based solely on the allowed condition of bilateral carpal tunnel syndrome when none of the doctors opined that she was permanently and totally disabled solely as a result of this allowed condition. For the reasons that follow, the magistrate finds that relator has failed to demonstrate that the commission abused its discretion.
 {¶ 34} The magistrate will address relator's second argument first. Relator contends that hearing officers are not qualified to evaluate medical evidence and combine medical findings and opinions reached by different doctors together to reach a conclusion that the claimant herein is permanently and totally disabled. Part of relator's argument focuses on the fact that in his May 18, 2004 report, claimant's treating physician, Dr. May, opined that claimant was permanently and totally disabled as a result of all of her allowed conditions plus her age and education. Relator notes that Dr. May considered claimant's respiratory conditions in addition to the bilateral carpal tunnel syndrome and that his opinion was based in part upon analysis of disability factors.
 {¶ 35} Relator is correct to assert that vocational analysis is the responsibility of the commission and physicians are only to render opinions relative to impairment. As such, if Dr. May's report was the only evidence upon which the commission relied to find claimant permanently and totally disabled solely as a result of the bilateral carpal tunnel syndrome, this magistrate would have to conclude that Dr. May's report did not constitute "some evidence" because of Dr. May's consideration of nonmedical disability factors. However, Dr. May's report is not the only evidence upon which the commission relied.
 {¶ 36} This leads into relator's argument that the commission is not entitled to combine medical reports and extrapolate findings from various medical reports to reach a conclusion that claimant was permanently and totally disabled. Relator contends that the commission is not qualified to do so.
 {¶ 37} Relator cites to no law that the commission cannot combine findings from various medical reports to reach a conclusion relative to disability. In the present case, the commission not only relied upon the report of Dr. May, but the commission also relied upon the reports of Dr. Writesel, Stutzman, and Burdge as well as the EMG studies. The commission noted that claimant has severe to moderate carpal tunnel syndrome in each wrist, despite surgery and injections by Dr. Stutzman. The commission noted Dr. Stutzman's reluctance to perform further surgery if the injections were not helpful. Further, the commission noted that Dr. Burdge found that claimant had some of the most severe symptoms and EMG findings post-surgery that he had ever found. Further, considering the restrictions noted in Dr. Writesel's report, indicating that claimant was "restricted from performing any repetitious or forceful use of both hands and wrists [and] limited from lifting, carrying, pushing, or pulling," that there were no jobs which claimant could perform physically.
 {¶ 38} The magistrate does not find this to be an abuse of discretion. While Dr. Writesel opined that claimant was capable of performing some remunerative employment, the commission disagreed and found that the restrictions Dr. Writesel placed upon claimant would preclude her from being able to perform even sedentary work as that work would require lifting up to ten pounds. As such, in the present case, the magistrate finds that, based upon the medical evidence presented, the commission did not abuse its discretion in finding that, based solely upon the severe bilateral carpal tunnel syndrome which claimant has, she was permanently and totally disabled.
 {¶ 39} Relator also contends that the commission abused its discretion by not taking into consideration the fact that claimant had failed to pursue rehabilitation before filing her application for PTD compensation. Relator cites State ex rel.Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250, where the court noted that PTD compensation is viewed as a compensation of last resort, and should be awarded only when all reasonable avenues of accomplishing a return to employment have failed. As such, the court indicated that it was reasonable to expect a claimant to participate in return-to-work efforts to the best of their abilities or to take the initiative to improve their employment potential. See, also, State ex rel. Cunningham v.Indus. Comm. (2001), 91 Ohio St.3d 261. While relator has correctly cited the law, the magistrate finds that Wilson andCunningham are factually different from the present case.
 {¶ 40} Both Wilson and Cunningham were relatively young when their applications for PTD compensation were decided, 47 and 51 years of age respectively. Claimant in the present case was 64 years of age at the time the PTD application was filed. Further, both Wilson and Cunningham suffered from relatively low levels of impairment, while claimant in the instant case has significantly greater impairment: according to Dr. Burdge, a 44 percent impairment of the whole person and according to Dr. Stanko, a 33 percent whole person impairment. Also, Wilson and Cunningham both had varied work experience making them, in the commission's and court's estimation, prime candidates for rehabilitation and reentry into the workforce. In the present case, claimant has had the same job for the last 14 years and that job, in and of itself, is sedentary in nature and involved data entry. Given all of the facts, the present case is distinguishable from Wilson
and Cunningham, and given the fact that the commission found claimant unable to perform any sustained remunerative employment, claimant was likewise unable to participate in any rehabilitation. As such, the fact that the commission did not discuss her failure to seek rehabilitation is immaterial.
 {¶ 41} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in granting PTD compensation to claimant and relator's request for a writ of mandamus should be denied.