**[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 8.]**

THE STATE EX REL. RHOTEN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Rhoten v. Indus. Comm.*, 1996-Ohio-110.]

*Workers' compensation—Application for permanent total disability compensation—Industrial Commission abuses its discretion in denying claim when its order does not satisfy Noll requirements.*

(No. 94-2137—Submitted July 24, 1996—Decided October 23, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD08-1158.

_____

{¶ 1} Appellee-claimant, Evelyn J. Rhoten, sustained two injuries in the course of and arising from her employment as a housekeeper for Best Western East motel in Mason, Ohio. Her workers' compensation claims were collectively allowed for "acute strain right knee, aggravation of pre-existing lumbar strain, osteoarthritis right knee, herniated intervertebral disc L3-4 with severe facet arthrosis."

{¶ 2} In 1991, she moved appellant, Industrial Commission of Ohio, for permanent total disability compensation. Dr. Edward M. Slowik found claimant unable to do "repetitive bending, twisting, squatting, crouching, kneeling, standing or crawling" and assessed a permanent total impairment. Dr. Arnold R. Penix assessed claimant a forty-one percent permanent partial impairment with a capacity for sedentary to light work.

{¶ 3} Conducting a psychological evaluation with emphasis on vocational factors, Kenneth Tecklenburg, Ph.D., found that claimant's intellectual functioning was in a low average range. He noted that "[n]ormally, individuals who scores [*sic*] in this range are able to obtain a high school degree." He also felt, however, that

claimant's age and unskilled work history offset her learning capacity and realistically prevented sustained remunerative employment.

{¶ 4} An initial order by the commission in 1992, denying permanent total disability compensation, was returned to the commission by the court of appeals for further consideration pursuant to *State ex rel. Noll v. Indus. Comm.* (1990), 57 Ohio St.3d 203, 567 N.E.2d 245. This generated a second order in 1993, denying permanent total disability compensation, which read:

"* * * The order is based particularly upon the reports [*sic*] of Doctor Penix, evidence in the file and/or evidence adduced at the hearing.

"Medical evidence on file reveals that the claimant's physical presentation permits her to engage in sedentary to light duty work activity. In this regard the Commission relies upon the report of Arnold R. Penix, M.D., disinterested orthopedic specialist. Dr. Penix examined the claimant and found a 41% permanent partial impairment secondary to the allowed conditions in both claims. Dr. Penix's exam includes numerous normal objective physical findings including negative straight leg raising, normal sensory exam, normal reflexes at the knees and ankles, normal strength in the quadriceps, hamstrings, and extensor hallucis longus bilaterally. Dr. Penix concluded the industrial injuries do not prohibit the claimant from engaging in all forms of sustained remunerative employment. He reported that the claimant can engage in sedentary work activity at this time, however, she is medically stable to participate in rehabilitation services at a sedentary to light duty activity level. Dr. Penix recommended weight loss, reconditioning and a job search for sedentary to light duty employment. As such, the Commission finds the medical evidence to indicate the claimant has the capacity to perform sedentary to light work activity. From a vocational perspective it is found that claimant possesses the requisite skills to perform sedentary to light duty work activity. The claimant has a varied work history which includes being a cookie packer, tabacco [*sic*] bag catcher, residential cleaner, machine operator and commercial

housekeeper. The claimant has only a seventh grade education, however, K. Tecklenburg, Ph.D. reported claimant's IQ indicates the potential to learn new material. While the claimant cannot resume her former duties as a commercial housekeeper, she can perform other sustained remunerative employment. It is noted the claimant has prior work experience at various factory jobs. It is found that she is physically capable of resuming sedentary to light factory work, as well as other sedentary to light employment; and she has the IQ to learn new tasks. At the age of 66 the claimant may choose not to re-enter the work force, however, she is capable of engaging in sustained remunerative employment considering the industrial injuries. Therefore, the application for permanent total disability is denied."

{¶ 5} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying permanent total disability compensation. The appellate court agreed and ordered the commission to award permanent total disability compensation pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666.

{¶ 6} This cause is now before this court upon an appeal as of right.

———————————

*Finkelmeier & Finkelmeier* and *William I. Farrell*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Diane M. Meftah*, Assistant Attorney General, for appellant.

———————————

*Per Curiam.*

{¶ 7} We are once again asked to evaluate the sufficiency of what is actually the second permanent total disability order issued in this case. The first order was returned to the commission by the court of appeals after the latter concluded that the order did not adequately explain its reasoning as *Noll* demands. The ensuing

order, now before us, was also found by the appellate court to be *Noll*-deficient—a conclusion with which we agree.

{¶ 8} Claimant's medical capacity for sedentary work is not seriously disputed. At issue, therefore, are claimant's nonmedical disability factors, particularly her age, work history, and education. Beginning with the last element, the commission's disposition of the education factor was not an abuse of discretion.

{¶ 9} The tenor of the commission's analysis suggests a recognition of the impediment presented by claimant's seventh grade education. The commission reasoned, however, that the lack of formal schooling was offset, to some degree, by claimant's intellectual capacity to be retrained. This is a defensible conclusion.

{¶ 10} We recognize the obstacle that the lack of a high school degree can present. We also, however, recognize that the absence of a high school diploma does not necessarily denote a lack of a claimant's intelligence. In some cases, an otherwise bright claimant may lack a diploma because uncontrollable circumstances forced the claimant to exit school prematurely. In this case, Dr. Tecklenburg concluded that claimant was intellectually capable of completing high school had she not been forced to leave to care for her siblings. The commission did not, therefore, abuse its discretion in finding that claimant's education was not a complete barrier to retraining.

{¶ 11} The commission's treatment of claimant's work history is more tenuous. The commission noted claimant's prior factory employment, including her jobs in the 1940s as a cookie packer and as a tobacco bag catcher. While we acknowledge the commission's considerable latitude in the interpretation of nonmedical disability factors, we find that, in this instance, the commission's reliance on two positions that claimant performed nearly fifty years ago constitutes an abuse of discretion. Removing these jobs from our consideration leaves claimant with only one year of factory experience that is vastly outweighed by claimant's years of housekeeping --work she can no longer perform.

{¶ 12} Two assumptions by the commission further undermine its analysis. The first is that every job produces some transferable skill. The second is that this claimant's prior jobs left her with skills transferable to sedentary work.

{¶ 13} The commission's first assumption ignores the plethora of *un*skilled jobs in the workplace. The second ignores that none of claimant's jobs had been sedentary. It is thus unclear how claimant's jobs would yield sedentary skills.

{¶ 14} The commission could, of course, have facilitated review by identifying these perceived "skills." Under similar circumstances, the court in *State ex rel. Haddix v. Indus. Comm.* (1994), 70 Ohio St.3d 59, 61, 636 N.E.2d 323, 324, held:

"The commission determined that claimant's prior work as a gas station attendant and press operator provided him with skills transferable to sedentary employment. The commission's order, however, does not identify what those skills are. Such elaboration is critical in this case, since common sense suggests that neither prior work is, in and of itself, sedentary.

"The commission responds that it 'inferred' from claimant's gas station job that claimant 'perform[ed] a variety of duties, which would include such things as pumping gas, washing windows, dealing with customers at retail, making change, filling out credit card slips, operating the cash register, and light custodial work.' Again, however, none of this explanation was stated in the order. Moreover, pumping gas, washing windows and light custodial duties do not suggest sedentary employment.

"The commission's order, contrary to *Noll*, does not, therefore, adequately explain how these vocationally neutral and/or unfavorable factors combine to produce a claimant who is able to work. * * *"

{¶ 15} In summary, claimant spent all but one year of her recent work history employed as a housekeeper--a job that is now foreclosed by injury. At best, claimant's work history could be considered as vocationally neutral if viewed as

being offset by claimant's capacity to retrain. It is perhaps more accurate to view claimant's work history unfavorably, but under no circumstances should it be deemed an asset. In so doing, the commission abused its discretion.

{¶ 16} The final variable noted by the commission was claimant's age. The commission did not expressly declare claimant's age to be an asset or liability, although, again, the order's tone suggests recognition of the obstacles to employment that claimant's age (sixty-six) might provide. The effect of age, however, like other factors, can be diminished by other characteristics possessed by the claimant. An advanced age that might be employment-prohibitive to a laborer may not have the same effect on a white collar worker.

{¶ 17} In this case, the commission appears to downplay the negative aspects of claimant's age by speculating that if the claimant indeed failed to return to work, it may be due to personal choice. We reject this reasoning.

{¶ 18} The claimant undeniably had that option, but there is no evidence that claimant ever voiced an unwillingness to return to work if able. To the contrary, claimant's permanent total disability compensation application and Dr. Tecklenburg's report reflect claimant's enjoyment of her work and her regret that she could not return to it. The commission's reasoning constitutes an abuse of discretion.

{¶ 19} Taken together, these errors compel us to conclude that the commission's order does not satisfy *Noll*. Considering both the claimant's overall presentation and the commission's failure on two occasions to produce a *Noll*-compliant order, we hereby affirm the issuance of a writ of mandamus pursuant to our decision in *Gay*.

{¶ 20} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

STRATTON, J., dissents.

————————————

**STRATTON, J., dissenting.**

{¶ 21} Not only was the Industrial Commission's order supported by "some" evidence, it explained in great detail the factors involved in its denial of permanent total disability compensation. The majority seems to require an extraordinarily detailed listing of precise skills that can transfer to other work; yet I can think of a host of sedentary jobs that someone with claimant's background can perform based on the commission's summary.

{¶ 22} In addition, the majority's treatment of age virtually turns workers' compensation into a retirement program. I do not believe that the purpose of workers' compensation is to provide a cushion for everyone who reaches retirement age and finds re-employment more difficult. Yet this is what this court seems to require of workers' compensation. There is inherent reverse age discrimination here -- if an older worker sustains the same injury as a younger worker, under the majority's standard, the older worker is more likely to receive compensation for the same injury simply because of his or her age. This is unfair to both the younger worker and the employer. It also provides a disincentive to employers to hire older workers because of greater exposure to higher workers' compensation awards. I do not believe this is the intent of the majority's opinion, but I believe that it will be the result. Therefore, I respectfully dissent.

————————————