DECISION
Relator, Naoma J. Gordon, has filed this original action in mandamus requesting this court to issue a writ of mandamus requiring respondent Industrial Commission of Ohio to vacate its order denying her application for permanent total disability compensation, and to enter an order granting said compensation.
Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (See Appendix A attached.) The magistrate concluded that the Industrial Commission of Ohio abused its discretion in denying relator's application based upon transferability of work skills that it failed to identify. Accordingly, the magistrate determined that this court should issue a writ of mandamus requiring respondent-commission to vacate its order of denial and to issue a new order either granting or denying relator's application in compliance with relevant law.
Respondent-commission filed objections to the decision of the magistrate, contesting the magistrate's conclusion that the commission had based its denial of relator's application on the existence of unspecified transferable skills. Agreeing with respondent-commission that the commission's decision was not impermissibly based upon unidentified transferable skills, but was, in fact, based upon its finding that her residual functional capacity in conjunction with her accurately categorized intellectual abilities would allow her to perform entry-level sedentary sustained remunerative employment which would require no specific training or, at most, some limited on-the-job training, we sustain respondent-commission's objections.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts. Therefore, we adopt the magistrate's findings of fact, but reject the conclusions of law contained in the magistrate's decision for the reasons stated. Accordingly, the requested writ is denied.
Objections sustained; writ of mandamus denied.
DESHLER and KLATT, JJ., concur.
 APPENDIX A IN MANDAMUS
In this original action, relator, Naoma J. Gordon, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
1. On September 10, 1977, relator sustained an industrial injury while employed as a "hospital aide" for respondent Apple Creek Development Center, a state-fund employer. On that date, an institutionalized patient butted into relator's back causing her to fall forward and strike a chair. The industrial claim is allowed for: "low back strain; aggravation of preexisting depression" and is assigned claim No. PE649375.
2. On August 18, 2000, relator filed an application for PTD compensation.
3. On November 7, 2000, relator was examined by commission specialist and orthopedic surgeon, George A. Hunter, M.D. In his narrative report, Dr. Hunter wrote:
 It is further my opinion that this claimant would not be able to return to her previous type of employment as a Hospital Aide, because of the amount of bending and lifting that would be required. I do feel that she would be able to work at a sedentary type of occupation, with no lifting over 10 pounds.
 It is my opinion that this claimant has a 5% whole person impairment for the allowed condition of "low back strain" for claim #PE649375.
4. Dr. Hunter also completed an Occupational Activity Assessment form dated November 7, 2000. The form asks the examining doctor to indicate by checkmark the claimant's capability for certain types of occupational activities. On the form, Dr. Hunter indicated that relator can sit for "3-5 HRS" and can stand for "3-5 HRS." She can lift or carry up to ten pounds from "0-3 HRS." She cannot lift or carry over ten pounds. She cannot climb ladders. She cannot crouch, stoop, bend or kneel. However, relator's ability to handle (seize, hold, grasp, turn) is unrestricted. Her ability to reach overhead or at waist level is unrestricted.
5. On November 9, 2000, relator was examined by commission specialist and psychologist, Robert L. Byrnes, Ph.D. In his narrative report, Dr. Byrnes wrote:
 Based on the history and examination it is my opinion that to a reasonable degree of medical probability Ms. Gordon has reached maximum medical improvement relative to her allowed mental condition (Aggravation of Pre-Existing Depression). From the history it appears that Ms. Gordon's activities of daily living became more restricted after being injured at work. She retains social skills. She is involved in some purposeful activity. Her adaptive capacity has been strained.
 Based on the history and examination I diagnosed two mental health disorders Depression and Panic Attacks. Her claim allowance is only for Depression. According to the AMA Guides to the Evaluation of Permanent Impairment IV, I find this claimant's impairment to be moderate and I assign a 15% whole person impairment for her allowed mental condition only.
6. Dr. Byrnes also completed an Occupational Activity Assessment form dated November 9, 2000. The form asks the examining psychologist the following two-part query:
 Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s) only, can this claimant meet the basic mental/behavioral demands required:
[1] To return to any former position of employment?
[2] To perform any sustained remunerative employment?
Dr. Byrnes responded affirmatively to both queries. In addition, Dr. Byrnes wrote:
 This claimant's allowed mental condition in and of itself would not prevent her return to work.
7. The commission requested an Employability Assessment Report from Nancy J. Borgeson, Ph.D., a vocational expert. The Borgeson report, dated December 5, 2000, responds to the following query:
 Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed conditions, identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
Indicating acceptance of Dr. Hunter's reports and responding to the above query, Borgeson wrote:
1A) Assembler, compact #739687066
Inspector, dowel #669687014
Charge Account Clerk #205367014
Order Clerk, food bev. #209567014
Bonder, semiconductor #726685066
Stone setter, jew. 735687034
1B) With remediation and training:
Food Checker #211482014
Sorter #209687022
Compiler #209387014
Auction Clerk #294567010
Assembler, semiconductor #726684034
Dispatcher, radio #379362010
The Borgeson report further states:
 III EFFECTS OF OTHER EMPLOYABILITY FACTORS. 1. ques. How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect her ability to meet basic demands of entry level occupations?
 ans. Age: Could be a factor at this time. Claimant was 43 and a Younger Person at the time of injury and of work cessation.
 Education: Could be a factor. Claimant completed only the 8th grade. She reports she can read and write but cannot do basic math well.
 Work History: Not necessarily a factor. Claimant has held jobs in service areas and in manufacturing at the unskilled and semi-skilled levels.
 2. ques. Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
 ans. There is no basis in the record for finding the claimant incapable in the regard.
 3. ques. Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
 ans. Claimant has been out of the labor market for 17 years and could have difficulty adjusting to a full-time work routine now. Although she is not on Social Security Disability benefits, she more likely is receiving PERS disability retirement benefits which could be a disincentive to any work return.
B. WORK HISTORY:
 Job Title Skill Level Strength Level Dates
 Hospital Aide Semi-skilled Medium 1977-1983
 Houseworker Semi-skilled Medium 1973-1977
 Assembler, Sm. Pts. Unskilled Light 1971-1972
 Waitress, informal Semi-skilled Light 1970-1071
8. Following a May 14, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 This order is based upon the reports of Dr. Robert Byrnes, Ph.D., dated 11/9/2000, Dr. George Hunter, M.D., dated 11/7/2000, and the vocational assessment of Nancy Borgeson, dated 12/6/2000.
* * *
 Claimant was examined by Dr. Robert Byrnes, Ph.D., on 1/9/2000 regarding the allowed psychological condition of this claim file. He found that the Claimant appeared to be of average intelligence and possessed a fairly good memory. He felt that she had retained the capacity to learn, and that her problem-solving skills, judgment, and insight were fair to good.
 Dr. Byrnes opined that, based solely upon the allowed mental condition, that the Claimant had reached maximum medical improvement. What is more interesting is that Dr. Byrnes diagnosed two mental health difficulties depression (allowed) and panic attacks (non-allowed). He assessed 15% permanent partial disability for the allowed mental condition and that this condition, standing alone, would not prevent the Claimant from returning to her former position of employment.
 The Claimant was examined by Dr. George Hunter, M.D., on 11/7/2000, regarding the allowed orthopaedic condition in this claim.
 Dr. Hunter noted that the Claimant is not currently being treated for her back pain.
 He found Claimant to have non-verifiable radicular complaints with no documentation of radiculopathy.
 Dr. Hunter found that the Claimant would be able to do the following activities on a daily basis: sit and stand up to five hours, walk up to three hours, lift up to ten pounds, and seize and reach waist level and overhead without restrictions. He also found tht the Claimant could occasionally climb stairs and would have no restrictions regarding the use of foot controls.
 Dr. Hunter found that the Claimant cannot return to her former position of employment, has reached maximum medical improvement, but would be able to perform sedentary type work.
 The Claimant is 60 years of age at this time. There seems to be somewhat of a discrepancy regarding Claimant's formal education. The file contains a notarized affidavit from the Claimant dated 9/30/91 wherein she attests to possessing ten years of formal education, but her IC-2 indicates schooling through only the eighth grade. When questioned at hearing, the Claimant insisted that the affidavit was in error and that she never went beyond the eighth grade. Claimant testified that she quit school to go to work as she "was on her own" but grade-wise she was an average student. Her IC-2 indicates an ability to read and write but her math skills were not good.
 The Claimant's work history ranges from unskilled to semi-skilled and from light to medium regarding strength level.
 A vocational assessment was done on 12/6/2000 by Nancy Borgeson, Ph.D. Ms. Borgeson found that the Claimant's work history would not necessarily be a factor as the Claimant's previous jobs were in the service area and in manufacturing.
 Ms. Borgeson found that Claimant's education would be a factor but noted the ability to read and write. This should allow the Claimant to perform sedentary, entry-level work, which may not require any specific training or, at minimum, short-term, on-the-job training. It is noted that the Claimant has demonstrated the intellectual ability to be trained as shown by her position as a hospital aide.
 When assessing the allowed mental condition of this file, the Staff Hearing Officer finds no disability which would prevent a return to previous employment. While there are other, underlying, non-allowed mental condition(s) which may prevent working, the Staff Hearing Officer does not consider them as they are not part of this claim.
 As for the allowed physical conditions, based upon the physical capabilities as found by Dr. Hunter, the Claimant would be able to perform work as an assembler of small parts or as a food and beverage order clerk.
 While Claimant's age presents somewhat of a barrier, she is still young enough to learn on the job duties with short-time training which would allow her to work as an assembly line inspector. Given her retained cognitive skills, the Claimant would also be able to perform work as a receptionist.
 Based on the above listed physical abilities and non-medical disability factors, this Hearing Officer finds that the Claimant's disability is not total, and that the Claimant is capable of engaging in sustained remunerative employment.
9. On September 21, 2001, relator, Naoma J. Gordon, filed this mandamus action.
Conclusions of Law:
It is the magistrate's decision that this court grant relator's request for a writ of mandamus, as more fully explained below.
For its threshold medical determination, the commission relied upon the report of orthopedic surgeon, Dr. Hunter, and the report of psychologist, Dr. Byrnes. Dr. Hunter opined that the physical injury prevented relator from returning to her former position of employment as a hospital aide but it did not prevent sustained remunerative employment of a sedentary nature. Dr. Byrnes opined that the allowed psychological condition did not prevent any sustained remunerative employment including a return to the former position of employment.
Relying upon the reports of Drs. Hunter and Byrnes, the commission concluded that the industrial injury permits sedentary employment.
In this action, relator does not challenge the commission's conclusion that her industrial injury medically permits sedentary employment. Relator does not challenge the reports of Drs. Hunter or Byrnes as constituting some evidence upon which the commission can rely.
However, in this action, relator does challenge the commission's analysis of the nonmedical factors.
Citing State ex rel. Bruner v. Indus. Comm. (1997), 77 Ohio St.3d 243, relator contends that the commission's nonmedical analysis is flawed because the order fails to identify what skills relator has acquired from her work history that would transfer to sedentary types of employment.
In Bruner, the court found the commission's order to be flawed because it denied PTD compensation based upon "transferable skills" that the order failed to identify. The Bruner court found the commission's lack of specificity even more troubling because the "skills" were derived from traditionally unskilled jobs.
Ohio Adm. Code 4121-3-34 sets forth the commission's rules applicable to the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B) sets forth definitions of terms used in the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B)(3) sets forth definitions of terms relating to vocational factors. Ohio Adm. Code 4121-3-34(B)(3)(c)(iv) states:
 "Transferability of skills" are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the claimant. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
Here, the commission relied upon the Borgeson vocational report to support its nonmedical analysis. It should be noted that the commission need not rely upon vocational reports because the commission is the expert on the nonmedical factors. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. However, it is within the commission's fact finding discretion to rely upon one or more vocational reports in rendering its nonmedical analysis. Id.
Here, the commission's reliance upon the Borgeson vocational report is problematic because of the following portion of that report:
 Work History: Not necessarily a factor. Claimant has held jobs in service areas and in manufacturing at the unskilled and semiskilled levels.
The above portion of the Borgeson report strongly suggests that there exists transferability of skills.[1] However, if relator has obtained skills through her past work that may qualify her for some other type of employment, particularly sedentary employment, those skills are not identified in the Borgeson report nor does the commission expand on the matter based upon its own expertise.
The Borgeson report does indicate that relator's employment as a hospital aide was semi-skilled. It also indicates that relator's employment as a "house worker" was semi-skilled. However, there is no indication in the Borgeson report as to what skills from those employments might be transferable to sedentary employment.
Given the commission's stated reliance upon the Borgeson vocational report to support its nonmedical analysis, it appears that the commission did rely upon transferability of skills that are unidentified either in the Borgeson report or in the commission's order. This was an abuse of discretion that fatally flaws the commission's order. See State ex rel. Haddix v. Indus. Comm. (1994), 70 Ohio St.3d 59, 61; State ex rel. Rhoten v. Indus. Comm. (1996), 77 Ohio St.3d 8, 11.
Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for PTD compensation, and, in a manner consistent with this magistrate's decision, enter a new order either granting or denying relator's PTD application.
[1] Borgeson seems to state that relator's work history is not necessarily a factor contributing to PTD. She thus suggests that something in the work history can positively contribute to reemployment.