DECISION
{¶ 1} Relator, Arthur Chapman, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order denying relator's application for permanent total disability ("PTD") compensation.[1] Relator also seeks other relief as this court deems appropriate. *Page 2 
 {¶ 2} Pursuant to former Loc. R. 12(M) of the Tenth District Court of Appeals, [2] this court appointed a magistrate without limitation of authority specified in Civ. R. 53(C) to consider relator's cause of action. After examining the evidence, the magistrate issued a decision, wherein she made findings of fact and conclusions of law. In her decision, the magistrate recommended denial of relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Pursuant to Civ. R. 53, relator has filed objections to the magistrate's decision challenging the magistrate's conclusions of law. In his objections, relator does not, however, challenge the magistrate's factual findings.[3] The commission opposes relator's objections to the magistrate's decision.
 {¶ 4} Claiming that the totality of the circumstances, namely, relator's injury, age, and level of literacy, renders the commission's denial of PTD compensation in this case an abuse of discretion, in his objections relator asserts that: (1) the magistrate misconstrued and misapplied State ex rel Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167; (2) the magistrate should have applied State ex rel. Hall v. Indus.Comm. (1997), 80 Ohio St.3d 289, to conclude that the commission abused its discretion by denying relator's application for PTD compensation; (3) the magistrate's conclusions of law conflict with State ex rel.Rhoten v. Indus. Comm. (1996), 77 Ohio St.3d 8; and (4) the magistrate should have followed State ex rel. Kokocinski v. Indus. Comm. (1984), *Page 3 11 Ohio St.3d 186, to conclude that the commission abused its discretion by denying relator's application for PTD compensation becauseKokocinski is factually similar to this case.
 {¶ 5} "Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. "Mandamus is an extraordinary writ that must be granted with caution." State ex rel.Liberty Mills, Inc. v. Locker (1986), 22 Ohio St.3d 102, 103. To be entitled to a writ of mandamus, relator must show: (1) a clear legal right to the relief requested; (2) respondents are under a clear legal duty to perform the act sought; and (3) relator has no plain and adequate remedy at law. State ex rel. Fain v. Summit Cty. AdultProbation Dept. (1995), 71 Ohio St.3d 658, citing State ex. rel. Howardv. Ferreri (1994), 70 Ohio St.3d 587, 589. To constitute an adequate remedy at law, the alternative must be complete, beneficial, and speedy.State ex rel. Mackey v. Blackwell, 106 Ohio St.3d 261, 2005-Ohio-4789, at ¶ 21, quoting State ex rel. Ullmann v. Hayes, 103 Ohio St.3d 405,2004-Ohio-5469, at ¶ 8, reconsideration denied, 104 Ohio St.3d 1124,2004-Ohio-7033.
 {¶ 6} "In matters involving the Industrial Commission, the determinative question is whether relator has a clear legal right to relief. Such a right is established where it is shown that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel. Valley PontiacCo., Inc. v. Indus. Comm. (1991), 71 Ohio App.3d 388, 391, citingState ex rel Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, "where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus *Page 4 
is inappropriate." Valley Pontiac Co., at 391, citing State ex rel.Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 7} In State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, the Supreme Court of Ohio held: "In a workers' compensation case involving permanent total disability, where the facts of the case indicate that there is a substantial likelihood that a claimant is permanently and totally disabled, courts are not and will not be precluded from ordering the Industrial Commission, in a mandamus action, to award permanent total disability benefits, notwithstanding the so-called `some evidence' rule." Id. at syllabus.
 {¶ 8} Finding that a misunderstanding of Gay existed and clarifyingGay in several key respects, in State ex rel. Pass v. C.S.T. ExtractionCo. (1996), 74 Ohio St.3d 373, the Supreme Court of Ohio later explained:
 * * * Gay did not abandon the "some evidence" rule articulated in State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. An order that is supported by "some evidence" will be upheld. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's.
 * * * Gay is not an occasion for de novo
evidentiary review. Gay relief is mandamus relief, the standard for which, in extent of disability cases, is an abuse of discretion. State ex rel. Rouch v. Eagle Tool Machine Co. (1986), 26 Ohio St.3d 197, 26 OBR 289, 498 N.E.2d 464. There is no abuse of discretion where there is "some evidence" in support.
 * * * Gay did not set aside our policy of deferring to the commission's expertise in disability matters. If, for example, the commission does not consider the claimant's age to be an obstacle to reemployment or retraining, and its reasoning is adequately explained, we will defer to its judgment. In the same vein, we will not depart from the principle that the commission alone is responsible for evaluating evidentiary weight and credibility. Burley, 31 Ohio St.3d at 20-21, 31 OBR at 72, 508 N.E.2d at 938. The commission's decision to find one medical report more persuasive than another, for example, will not be second-guessed. *Page 5 Gay relief was intended as a narrow exception to the general rule of returning Noll-deficient orders to the commission. * * * We, therefore, hold that Gay relief will be granted only in extraordinary circumstances revealing an abuse of discretion.
Id. at 376. (Emphasis sic.) See, also, State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203, syllabus (holding that "[i]n any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision").
 {¶ 9} "Permanent total disability is the inability to do any sustained remunerative work." State ex rel. Schultz v. Indus. Comm.,96 Ohio St.3d 27, 2002-Ohio-3316, at ¶ 61, reconsideration denied, 96 Ohio St.3d 1489,2002-Ohio-4478, citing Stephenson, at 170. (Emphasis sic.) "Therefore, an ability to do any work warrants the denial of PTD." Schultz, at ¶ 61. (Emphasis sic.) See, also, State ex rel. Lawson v. MondieForge, 104 Ohio St.3d 39, 2004-Ohio-6086, at ¶ 16, citingStephenson, supra (stating that "[permanent total disability] pivots on a single question: Is the claimant capable of sustained remunerative employment?"). (Emphasis sic.)
 {¶ 10} In Stephenson, "reiterating] that the determination of permanent total disability, and whether or not the claimant could return to any other remunerative employment, is an ultimate finding, totally within the province of the commission," id. at 172, the Supreme Court of Ohio "[held] it to be necessary that the commission look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination of permanent total disability." Id. at 173.
 {¶ 11} Here, in denying relator's application for PTD compensation, besides relying on the medical report of Perry S. Williams, M.D., wherein Dr. Williams opined that relator *Page 6 
had a 22 percent whole-person impairment and retained residual physical capacity to engage in sedentary to light work activities, the commission also considered relator's lack of formal education; his ability to learn new tasks when shown or told how to perform certain functions despite an inability to read or write; relator's age; relator's intelligence; and relator's very positive work history that included maintaining a new employment relationship as a mold operator for three years after working for 31 years for another employer as a brake operator.
 {¶ 12} Our review of the magistrate's decision finds no misconstruing or misapplication of Stephenson by the magistrate, as relator claims. Moreover, our review of the evidence also shows that the commission considered Stephenson factors when it adequately explained its denial of relator's application for PTD compensation. See, generally, State exrel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, 483-484
(stating that "the Industrial Commission, must specifically state which evidence and only that evidence which has been relied upon to reach [its] conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested"); State ex rel. FrigidaireDiv., General Motors Corp. v. Indus. Comm. (1988), 35 Ohio St.3d 105,107, citing Mitchell, at 483-484 .
 {¶ 14} Accordingly, relator's contention that the magistrate misconstrued or misapplied Stephenson is not well-taken.
 {¶ 15} Relator also claims that the magistrate should have appliedHall, supra, to conclude that the commission abused its discretion by denying relator's application for PTD compensation.
 {¶ 16} In Hall, the Supreme Court of Ohio found that the commission's order clearly defied Noll. Id. at 282. Here, unlike Hall, the commission complied with Noll by *Page 7 
specifically stating what evidence had been relied upon and briefly explaining the reasoning for its decision. Moreover, here the commission found that relator, after leaving his employment, did not attempt to seek other employment or attempt to contact an agency to seek help in finding employment, and, in this case, the commission further found that relator failed to take any steps to improve his re-employment potential during the years he had not been working. See, generally, State ex rel.Paraskevopoulos v. Indus. Comm. (1998), 83 Ohio St.3d 189, 193 (stating that "[a] claimant's failure to make reasonable efforts to enhance his/her rehabilitation reemployment potential can be a factor in a PTD determination"); State ex rel. Wilson v. Indus. Comm. (1997),80 Ohio St.3d 250, 253 (wherein the court "view[ed] permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed" and the court found that "it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential").
 {¶ 17} Accordingly, because Hall is distinguishable, we disagree with relator's claim that the magistrate erred by failing to applyHall when she concluded that relator failed to demonstrate an abuse of discretion by the commission.
 {¶ 18} Relator also claims the magistrate's conclusions of law conflict with Rhoten, supra. We disagree.
 {¶ 19} Finding that the commission abused its discretion by viewing the claimant's work history as an asset, Rhoten, at 11-12, and acknowledging that "[t]he effect of age * * * like other factors, can be diminished by other characteristics possessed by the claimant,"Rhoten, at 12, the Rhoten court found that the commission appeared to *Page 8 
downplay the negative aspects of the claimant's age by speculating that if the claimant failed to return to work it might be due to personal choice. The Rhoten court ultimately concluded: "Taken together, these errors compel us to conclude that the commission's order does not satisfy Noll. Considering both the claimant's overall presentation and the commission's failure on two occasions to produce aNoll-compliant order, we hereby affirm the issuance of a writ of mandamus pursuant to our decision in Gay." Id. at 12.
 {¶ 20} Here, as discussed above, we have already concluded that the commission issued a Noll-compliant order. Moreover, although the commission in this case acknowledged that relator was approaching retirement age because he was 62 years old, the commission found that relator possessed characteristics that diminished the effect of relator's age. Specifically, the commission considered, among other things, relator's ability to learn new tasks when shown or told how to perform certain functions despite an inability to read or write, relator's intelligence, and relator's very positive work history. The commission further observed that relator had remained employed until 2005 when his employer of record could no longer accommodate his light-duty work restrictions. See, generally, Pass, at 376 (stating that "[i]f * * * the commission does not consider the claimant's age to be an obstacle to reemployment or retraining, and its reasoning is adequately explained, we will defer to its judgment"); see, also, State ex rel.Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414, 417.[4]
 {¶ 21} Accordingly, because Rhoten is distinguishable, we therefore disagree with relator's claim that the magistrate's conclusions of law conflict with Rhoten. *Page 9 
 {¶ 22} Finally, claiming that Kokocinski, supra, is factually similar to this case, relator asserts that the magistrate erred by failing to follow Kokocinski when she concluded that relator did not demonstrate an abuse of discretion by the commission.
 {¶ 23} In Kokocinski, after the claimant's right shoulder was surgically repaired following an industrial accident, the claimant, who was 61 years old at the time of her injury, twice applied for PTD compensation. At one point, the claimant was evaluated by one examiner who "reported that [the claimant] suffered from a disability of `at least 75%,'" id. at 187, and who in a deposition later stated that he believed the claimant was 100 percent permanently and totally disabled. Id. By comparison, in the present case Dr. Williams, upon whose opinion the commission relied, found relator to have a 22 percent whole-person impairment.
 {¶ 24} In Kokocinski, the court ultimately concluded: "The facts of the case are clear. [The claimant's] educational and vocational background limits her employment opportunities to those involving unskilled manual labor. Her injury effectively prevents her from performing those types of activities. There was no evidence upon which the commission could have determined otherwise." Id. at 189.
 {¶ 25} Unlike Kokocinski, the facts of this case do not clearly show that relator's allowed conditions effectively prevent him from performing activities involving unskilled labor. Here, notwithstanding relator's age, relator's ability to learn new tasks despite his difficulties with reading and writing, relator's ability to maintain new employment after having been employed with a different employer for 31 years, as well as relator's "very positive" work history, constitutes "some evidence" in the record upon which the commission could have relied in reaching its determination that relator retains the capacity to engage in unskilled sustained remunerative employment within the physical *Page 10 
restrictions set forth by Dr. Williams, even though relator had nonmedical disability factors that could affect his ability to work. Cf.Hall, at 292 (stating that "[a]ge * * * is immaterial if [a] claimant lacks the intellectual capacity to learn").
 {¶ 26} Finding Kokocinski is distinguishable, we disagree with relator's contention that the magistrate erred by failing to followKokocinski to conclude that the commission abused its discretion by failing to grant PTD compensation to relator.
 {¶ 27} Accordingly, following independent review pursuant to Civ. R. 53, as amplified herein, we adopt the magistrate's decision as our own, including the magistrate's findings of fact and conclusions of law. For reasons set forth above, we overrule relator's objections to the magistrate's decision and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
TYACK and T. BRYANT, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 11 
 APPENDIX A MAGISTRATE'S DECISION Rendered on May 21, 2008 IN MANDAMUS {¶ 28} Relator, Arthur Chapman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation. *Page 12 
Findings of Fact: {¶ 29} 1. Relator has sustained two work-related injuries during the course of his employment and his claims have been allowed for the following conditions: "fracture dorsal vertebra-closed; cervical-thoracic strain; right rotator cuff strain; right shoulder tendonitis."
 {¶ 30} 2. On July 7, 2006, relator filed his application for PTD compensation. At the time, relator was 62 years old, indicated that he had not attended school and was illiterate; he neither attended trade or vocational school nor had any type of special training; and, he could not read, but could write and perform basic math, but not well. Relator submitted the June 22, 2006 report of his treating physician Mark E. Coggins, M.D., who indicated that a functional capacity evaluation performed January 24, 2006 placed relator in a very limited work category for sedentary physical demand for dynamic lifting and medium physical demand category for static pushing and pulling. Dr. Coggins opined that, given relator's work history and training, he was permanently and totally disabled from gainful employment.
 {¶ 31} 3. Relator was examined by Perry S. Williams, M.D., who issued a report dated October 9, 2006. Dr. Williams opined that relator's allowed conditions had reached maximum medical improvement and assessed a 22 percent whole person impairment. Dr. Williams opined that relator was capable of performing sedentary to light-duty work, without any restrictions.
 {¶ 32} 4. Relator's application was heard before a staff hearing officer ("SHO") on February 15, 2007 and resulted in an order denying the application. The SHO determined that relator was capable of performing sedentary work based upon the report of Dr. Williams. Thereafter, the SHO rejected relator's claim that he was illiterate based *Page 13 
upon the SHO's conclusion that relator had personally handwritten parts of his PTD application. The SHO found that relator's age of 62, standing alone, did not preclude him from working, concluded that intellectually, relator was capable of retraining, and that relator's work history was positive and demonstrated that he was able to learn through on-the-job training.
 {¶ 33} 5. Relator filed a motion for reconsideration and specifically attached the affidavit of relator's counsel, M. Blake Stone, who averred that he and relator's daughter were the ones who completed relator's PTD application and that relator had only signed that application.
 {¶ 34} 6. The commission granted relator's request for reconsideration after finding that relator had met his burden of proving that the SHO's order contained a clear mistake of fact of such character that remedial action would clearly follow. Specifically, the commission identified as the mistake the SHO's conclusion that relator was not illiterate because he completed his application himself. However, although the commission granted reconsideration, the commission ultimately denied relator's application for PTD compensation. First, the commission relied upon the report of Dr. Williams and found that relator was capable of performing sustained remunerative employment in an unskilled sedentary to light work capacity. Thereafter, the commission rejected relator's claim that his lack of education and inability to read and write made him incapable of being retrained to perform sedentary to light-duty employment. The commission concluded that relator had demonstrated he had the intelligence to learn new tasks despite his inability to read and write. Specifically, the commission noted, that after being employed for 31 years as a break operator, relator retrained for a light-duty position with the employer and continued to work until the employer could no longer *Page 14 
accommodate his restriction. As such, the commission found that although relator had not completed a formal education, he demonstrated he had the ability to learn new tasks when shown or told how to perform certain functions. Regarding relator's age, the commission noted that he was approaching retirement age; however, the commission found that age alone was not a barrier to his employment in a sedentary to light-duty capacity. Further, the commission found relator's prior work history to be positive and it demonstrated he had the skills necessary to maintain employment. The commission noted that relator was able to maintain employment for 31 years, and was able to learn the skills necessary to change jobs and maintain a new employment relationship for another three years. Further, the commission noted that after the employer was no longer able to provide him with light-duty work, relator did not seek other employment or attempt to contact the rehabilitation division to seek help in finding employment. The commission found that relator had a duty to explore all reasonable avenues to find employment before seeking PTD compensation pursuant to State ex rel. Wilson v. Indus. Comm.
(1997), 80 Ohio St.3d 250.
 {¶ 35} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record *Page 15 
contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel.Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 37} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 38} In this mandamus action, relator cites Noll and Gay and argues that the commission has failed to adequately explain how a 62 year old illiterate man limited to sedentary employment can perform sustained remunerative employment. For the reasons that follow, this magistrate finds that relator has not demonstrated that the commission abused its discretion and relator's request for a writ of mandamus should be denied.
 {¶ 39} Contrary to relator's assertions, the commission did explain why it determined that relator was capable of performing some sustained remunerative employment. First, although the commission noted relator was closely approaching retirement age, the commission concluded his age alone did not preclude him from *Page 16 
performing some sustained remunerative employment. The Supreme Court of Ohio has held that there is not an age, ever, at which reemployment is held to be a virtual impossibility as a matter of law. Specifically, inState ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, the claimant was 64 years old; in State ex rel. DeZarn v. Indus.Comm. (1996), 74 Ohio St.3d 461, the claimant was 71 years old; inState ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414, the claimant was 78 years old; and in State ex rel. Bryant v. Indus.Comm. (1996), 74 Ohio St.3d 458, the claimant was 79 years old.
 {¶ 40} Next, the commission accepted that relator was illiterate; however, the commission refused to equate his illiteracy with an automatic inability to perform other employment. The commission specifically noted that after working for 31 years, relator had been able to learn how to perform a new job at a light-duty level. Further, relator continued in that job until the employer was unable to continue to accommodate his restrictions. As such, the commission concluded that relator had the intelligence to learn new tasks despite his inability to read and write.
 {¶ 41} Lastly, the commission determined that relator had a very positive work history, has skills necessary to maintain an employment relationship, was able to maintain an employment relationship for 31 years, and was able to learn the skills necessary to change jobs and maintain a new employment relationship for another three years. Based on those findings, the commission concluded that relator had the ability to perform at a sedentary light-duty level.
 {¶ 42} Relator cites the Supreme Court of Ohio's decision in State exrel. Kokocinski v. Indus. Comm. (1984), 11 Ohio St.3d 186, and asserts that, based upon Kokocinski, the commission had to find that he was permanently and totally disabled. *Page 17 
However, in Kokocinski the claimant was 63 years old and it had been determined that she had a 60 percent permanent partial disability. Further, although the Kokocinski case did involve an application for PTD compensation, the issues of law addressed in that case are not applicable here. Specifically, in Kokocinski the issues involved inconsistent medical reports and/or inconsistencies in a report and a physician's deposition testimony and/or the commission's rejection of a medical report on one issue, but the reliance on the same report to establish an essential fact on another issue. None of those issues are present here and relator does not challenge the report of Dr. Williams. As such, the magistrate finds that relator's assertion that the decision in Kokocinski warrants a finding that he is permanently and totally disabled is simply inaccurate.
 {¶ 43} Further, relator argues that the commission abused its discretion by holding his failure to seek any vocational rehabilitation against him, citing this court's decision in State ex rel. Franklin Cty.Bd. of Commrs. v. Indus. Comm., Franklin App. No. 05AP-493,2006-Ohio-3442. In that case, the employer argued that the commission abused its discretion by failing to take into consideration the fact that the claimant had failed to pursue rehabilitation before filing her application for PTD compensation. Citing Wilson, the employer argued that her failure to participate in return-to-work efforts should preclude her from receiving PTD compensation.
 {¶ 44} However, in the Franklin County Board of Commissioners case, the commission awarded PTD compensation based solely upon the medical evidence submitted relative to the claimant's allowed condition of bilateral carpal tunnel syndrome. There was no reason for the commission to consider any vocational disability factor because it had been determined that, from a medical standpoint, the claimant was incapable of performing any sustained remunerative employment. Since the claimant *Page 18 
was incapable of working, the claimant would have been incapable of retraining for employment. As such, the retraining issue was not relevant.
 {¶ 45} In the present case, although relator is older, the commission explained that relator would be capable of performing some sustained remunerative employment at a sedentary to light-duty level, his age alone was not work prohibitive, his inability to read was not synonymous with a lack of ability to retrain, he had demonstrated an ability to learn new tasks for a job, and could have sought out retraining when his employer was no longer able to offer him light-duty work. The magistrate finds that the commission's order meets the requirements ofNoll and Gay, and relator has not demonstrated that the commission abused its discretion.
 {¶ 46} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, and this court should deny relator's request for a writ of mandamus.
[1] Besides the Industrial Commission of Ohio, relator named Technocast, Inc. as a respondent in this original action. A review of the court's appearance docket shows that service of process was not effected upon Technocast, Inc.
[2] After relator commenced this original action, this court's local rules were amended, effective June 1, 2008. See Loc. R. 20 of the Tenth District Court of Appeals.
[3] See, generally, Civ. R. 53(D)(3)(b)(iv) (providing that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)").
[4] In Moss, supra, the Supreme Court of Ohio stated: "Age must * * * be considered on a case-by-case basis. To effectively do so, the commission must deem any presumptions about age rebuttable. Equally important, age must never be viewed in isolation. * * * [T]here is not an age-ever-at [sic] which reemployment is held to be a virtual impossibility as a matter of law. Certainly, it would be remiss to ignore the limitations that age can place on efforts to secure other employment. However, limitation should never automatically translate into prohibition." Id. at 417. *Page 1